Brian D. Chenoweth, WSB No. 25877
Chenoweth Law Group, PC
510 SW Fifth Ave., Fifth Floor
Portland, OR  97204-2138
Phone:  (503) 221-7958
Email:  brianc@northwestlaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| JOSEPH M. KING,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>AECOM GOVERNMENT SERVICES, INC., a Delaware corporation, AEROTEK, INC., a Maryland corporation, and DOES 1 through 50, inclusive,<br><br>　　　　　　　Defendants. | Case No.:<br><br>**COMPLAINT:**<br>1.  **Breach of Contract;**<br>2.  **Intentional Misrepresentation;**<br>3.  **Negligent Misrepresentation;**<br>4.  **Breach of the Implied Duty of Good Faith and Fair Dealing; and**<br>5.  **Failure to Pay Wages Due**<br><br>JURY TRIAL REQUESTED |
|---|---|

Plaintiff Joseph M. King ("Plaintiff") respectfully alleges as follows:

**I.   JURISDICTION AND VENUE**

1.　　　This court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between Plaintiff and Defendants.

2.　　　Venue is proper in this district because a substantial part of the events giving rise to Plaintiff's claims occurred within this district, and because Defendants are registered to do business in Washington and, on information and belief, are conducting business in Washington.

Page 1 -   COMPLAINT

**CHENOWETH LAW GROUP, PC**
**510 SW Fifth Avenue, Fifth Floor**
**Portland, OR  97204**
**Telephone: (503) 221-7958**
**Facsimile: (503) 221-2182**
**Email: brianc@northwestlaw.com**

## II. THE PARTIES

3. Plaintiff is a resident of Thurston County, Washington.

4. AECOM is a military supply company incorporated under the laws of Delaware with its principal place of business in Los Angeles, California.

5. Aerotek is a staffing company incorporated under the laws of Maryland with its principal place of business in Hanover, Maryland.

## III. FACTS COMMON TO ALL CAUSES OF ACTION

**A. Defendants Hired Plaintiff and Other Individuals Knowing They Did Not Meet U.S. Military Qualifications.**

6. In 2012, AECOM had a contract with the U.S. Government to supply the U.S. military with aircraft maintenance workers in Afghanistan pursuant to CFT Southwest Asia Contract (Task Order 0020) (the "Government Contract").

7. In an attempt to fulfill AECOM's obligations under the Government Contract, Defendants knowingly solicited, hired, and contracted hundreds of individuals who did not meet the necessary job qualifications established by the U.S. military.

8. These qualifications included specific military schooling and/or a Federal Aviation Administration Airframe and Power ("A&P") Certificate.

9. AECOM and Aerotek recruited hundreds of employees, including Plaintiff, to sign one-year employment contracts with AECOM. Defendants made numerous false representations to Plaintiff and others in connection with their hiring.

10. Some individuals were hired directly by AECOM, but many, including Plaintiff, were hired through the efforts of Aerotek.

11. On July 2, 2012, an Aerotek employee contacted Plaintiff about an opportunity to work for AECOM. Shortly after discussing the job with Aerotek, AECOM sent Plaintiff an employment offer letter, a true copy of which is attached Exhibit 1.

///

Page 2 -   COMPLAINT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, Fifth Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: brianc@northwestlaw.com

1  12. The offer letter promised an estimated annual salary of $101,708.57 plus a $6,000 incentive bonus payable at the conclusion of the one-year contract term.  Plaintiff was to work as an Aircraft Mechanic II Aerospace Structural Worker pursuant to the Government Contract.

13. Plaintiff submitted to Defendants his resume, which showed he did not have the necessary qualifications.  Plaintiff inquired about whether the job qualifications listed in the Government Contract would preclude him from being hired and fulfilling his employment.

14. Defendants falsely stated that Plaintiff was qualified to accept the assignment under the Government Contract.  Defendants assured Plaintiff that his prior military service and aircraft repair experience was comparable to the required qualifications and would be accepted by the U.S. Government.

15. Defendants knew or should have known that Plaintiff did not meet the job qualifications required by the U.S. Government.

16. Based on Defendants' representations, Plaintiff signed an employment agreement with AECOM, a true copy of which is attached as Exhibit 2 and hereby incorporated by reference (the "Agreement").  The Agreement requires a bi-weekly salary of $3,911.87 and $6,000 as incentive pay at the conclusion of the project, for a total of $107,708.62 for one year of work from September 20, 2012 through September 19, 2013.

17. In anticipation of his year-long job, Plaintiff purchased various tools totaling more than $1,000, which Defendants stated would be necessary for the job.  He also visited doctors to obtain clearance for AECOM's health requirements and the immunizations necessary for international travel, incurring costs of approximately $150.  Plaintiff also worked through the U.S. Government to obtain authorization to travel to Kuwait and Afghanistan, among other countries.

/ / /

Page 3 -   COMPLAINT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, Fifth Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: brianc@northwestlaw.com

18. At the time of Defendants' offer and Plaintiff's acceptance, Plaintiff was considering a second job offer that would have kept him close to home working in Fort Lewis, Washington.

**B.  Plaintiff's Employment Contract Was Improperly Terminated**

19. In August 2012, Plaintiff travelled to South Carolina to work for AECOM for one week and learn extensive safety, protocol, and other training required by AECOM at one of its numerous training facilities.

20. AECOM failed to pay him wages due under the Agreement for this week of work.

21. On or about September 22, 2012, AECOM flew Plaintiff to Kuwait before deploying him to Afghanistan approximately two weeks later.

22. Once arriving in Afghanistan with dozens of other AECOM mechanics, AECOM initially refused to allow Plaintiff and others to perform repairs on any aircraft.

23. While on base in Afghanistan, AECOM staff did not know what to do with Plaintiff and other mechanics, apparently because they did not understand whether the mechanics would be allowed to work on the aircraft by the military decision makers.  At various times, Plaintiff and others were told to start working and did work, only to be told later to stop because the military had changed its mind about their qualifications.

24. Finally, in December 2012, AECOM terminated Plaintiff and sent him home because he lacked the qualifications required by the U.S. military.  In so doing, AECOM failed to provide one-year of salary and other benefits as required under the Agreement.

### IV.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (Breach of Contract Against AECOM)

25. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 24 as though fully set forth herein.

/ / /

Page 4 -   COMPLAINT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, Fifth Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: brianc@northwestlaw.com

26. Plaintiff fully performed under the terms of the Agreement, or such performance was excused or discharged by AECOM's conduct.

27. The Agreement provides that in the event AECOM terminates Plaintiff's employment without cause, it shall pay plaintiff a pro-rata share of the incentive bonus.

28. AECOM breached the Agreement by failing to pay Plaintiff a pro-rata share of the incentive bonus.

29. As a direct and proximate result of AECOM's breach, Plaintiff has suffered damages in the form of lost earnings in the amount of $1,000.

30. The incentive bonus is considered wages under Washington wage laws. Plaintiff's pro-rata share of the incentive bonus was due to be paid at the end of the next established pay period after Plaintiff ceased working for AECOM.

31. AECOM's failure to pay Plaintiff a pro-rata share of the incentive bonus was willful. Plaintiff requests double damages and attorney fees pursuant to RCW 49.52.070.

32. In the alternative to RCW 49.52.070, Plaintiff seeks reasonable attorney fees pursuant to RCW 49.48.030.

**SECOND CAUSE OF ACTION**

**(Intentional Misrepresentation Against all Defendants)**

33. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 24 as though fully set forth herein.

34. Defendants represented to Plaintiff, among other things, that (1) he was fully qualified to perform work under the Government Contract and repair aircraft for the U.S. military, (2) to the extent there were technical qualifications he did not possess, that the U.S. Government would consider his experience sufficient and/or waive the technical qualifications, and (3) AECOM would employ him as a mechanic for one year in Afghanistan.

///

Page 5 -   COMPLAINT

**CHENOWETH LAW GROUP, PC**
**510 SW Fifth Avenue, Fifth Floor**
**Portland, OR  97204**
**Telephone: (503) 221-7958**
**Facsimile: (503) 221-2182**
**Email: brianc@northwestlaw.com**

35. These representations were material to Plaintiff's decision to accept AECOM's employment offer and forego other employment opportunities in Washington.

36. These representations were false, and Defendants had actual knowledge of the falsity of the representations, or acted with reckless disregard for the truth.

37. Defendants intended Plaintiff to rely on the representations. Plaintiff had no knowledge of the falsity of the representations, believed them to be true, and actually relied on them, accepting the job with AECOM and foregoing other employment opportunities.

38. Plaintiff had a right to rely on the false representations, as they were made by representatives of Defendants who held themselves out as having the authority to represent the interests of Defendants, and there were no facts or circumstances that led Plaintiff to question the veracity of the representations.

39. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount to be proven at trial but no less than $90,000.

### THIRD CAUSE OF ACTION

**(Negligent Misrepresentation Against all Defendants)**

40. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 24, 31 through 32, and 34 through 38, as though fully set forth herein.

41. The representations were made to induce Plaintiff to enter into an employment contract with AECOM, so it could fulfill its contract obligations under the Government Contract.

42. Plaintiff justifiably relied on the representations. Defendants knew or should have known that the representations were the basis for Plaintiff's decision to accept employment with AECOM and to forgo other opportunities.

/ / /

/ / /

Page 6 -   COMPLAINT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, Fifth Floor
Portland, OR  97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: brianc@northwestlaw.com

43. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount to be proven at trial but no less than $90,000.

## FOURTH CAUSE OF ACTION

**(Breach of Implied Duty of Good Faith and Fair Dealing Against AECOM)**

Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 24 as though fully set forth herein.

44. A duty of good faith and fair dealing is implied in the Agreement, requiring the parties to cooperate with each other so that each may receive the full benefit of performance.

45. AECOM owed a duty to Plaintiff to ensure that he met the requirements of the Government Contract before causing Plaintiff to forego other employment, purchase special tools for the assignment, undergo medical exams and obtain required immunizations, obtain government clearance to travel to Afghanistan, go through a week of training in South Carolina, and travel to Afghanistan to report for work.

46. AECOM breached the implied duty of good faith and fair dealing by representing to Plaintiff that he possessed the requisite training and experience to fulfill the requirements of the Government Contract when in fact he did not, and by failing to clear Plaintiff with the proper government representatives to make sure that once in Afghanistan, Plaintiff would be permitted to work under the Government Contract.

47. As a direct and proximate result of AECOM's breach, Plaintiff has suffered damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount to be proven at trial but no less than $90,000.

/ / /

/ / /

/ / /

Page 7 - COMPLAINT

**CHENOWETH LAW GROUP, PC**
**510 SW Fifth Avenue, Fifth Floor**
**Portland, OR  97204**
**Telephone: (503) 221-7958**
**Facsimile: (503) 221-2182**
**Email: brianc@northwestlaw.com**

## SIXTH CAUSE OF ACTION

### (Failure to Pay Wages Due Against AECOM)

Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 24 as though fully set forth herein.

Plaintiff was required by AECOM to attend a mandatory one-week training session in South Carolina as a condition to being approved to travel to Afghanistan to fulfill his obligations under the Agreement.

Plaintiff attended five days of training sessions while in South Carolina which each lasted eight hours. Plaintiff was not compensated for the hours he attended the mandatory training. Plaintiff is therefore due wages equivalent to one week's pay, which under his contracted rate totals $1,955.93.

48. Under the terms of his employment contract, Plaintiff was entitled to a pro-rata share of the incentive bonus upon termination, in the amount of $1,000, which he did not receive.

49. The incentive bonus is considered wages under Washington wage laws. Plaintiff's pro-rata share of the incentive bonus was due to be paid at the end of the next established pay period after Plaintiff ceased working for AECOM.

50. AECOM's failure to pay Plaintiff for the week of training and the pro-rata share of the incentive bonus was willful. Plaintiff requests double damages and attorney fees pursuant to RCW 49.52.070.

51. In the alternative to RCW 49.52.070, Plaintiff seeks reasonable attorney fees pursuant to RCW 49.48.030.

WHEREFORE, Plaintiff prays for judgment as follows:

1. General and compensatory damages, according to proof;
2. Interest accrued to date;

///

Page 8 - COMPLAINT

CHENOWETH LAW GROUP, PC
510 SW Fifth Avenue, Fifth Floor
Portland, OR 97204
Telephone: (503) 221-7958
Facsimile: (503) 221-2182
Email: brianc@northwestlaw.com

1      3.      Costs and attorney fees to the extent allowed by law; and

2      4.      Such other and further relief as the Court may deem just and proper.

3  DATED:  February 19, 2015

4                                              CHENOWETH LAW GROUP, PC

5                                               */s/ Brian D. Chenoweth*

6                                              Brian D. Chenoweth, WSB No. 215877
                                                510 SW Fifth Ave., Fifth Floor

7                                              Portland, OR  97204
                                                Phone: (503) 221-7958

8                                              Facsimile: (503) 221-2182
                                                Email: brianc@northwestlaw.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 9 -   COMPLAINT

**CHENOWETH LAW GROUP, PC**
**510 SW Fifth Avenue, Fifth Floor**
**Portland, OR  97204**
**Telephone: (503) 221-7958**
**Facsimile: (503) 221-2182**
**Email: brianc@northwestlaw.com**

**A=COM**

AECOM  
1200 Summit Ave  
Suite 320  
Fort Worth TX 76102  
www.aecom.com

817 698 6755   tel  
817 698 6759   fax

July 2, 2012

**Joseph Max King**
**5402 Sleater Kinney Road N.E., Olympia, WA 98506**
**(719) 360-9250**

Subject: Employment Offer

**Joseph,**

On behalf of AECOM Technology Corporation and its affiliate entity, AECOM Government Services, ("AECOM"), I am pleased to extend an offer of employment as an **Aircraft Mechanic II (MA) (23022),** supporting the CFT Southwest Asia Contract (Task Order 0020) in **Afghanistan.** We propose to strart you at an estimated annual salary of **$101, 708.57** allowances. *Your employment is contingent upon you passing medical/pre-employment drug screening, security background check, obtaining a security clearance, clearing the CONUS Replacement Center (CRC) and obtaining a U.S. Passport.* Actual start date will be provided at a later date based on successful completion of pre-deployment requirements.

The example below represents the breakdown of compensation for successful contract completion:

Compensation:          $ 101,708.57 (based on a 84 hour workweek)  
Project Incentive Pay:  $     6,000  
(payable upon successful completion of Employment Agreement)

Employment and Company provisions:

| | |
|---|---|
| Status: | Exempt, unaccompanied |
| Term of Agreement: | One (1) year |
| Regular Work Week: | 84-hour work week (12 hours/day, 7 days/ week) |
| Housing: | Provided (furnished and shared) |
| Transportation: | Provided |
| Airfare: | Economy airfare from Home of Record or Recruitment Point and return will be provided upon successful completion of your Employee Agreement. Any mobilization costs will be deducted upon failure to complete contract. |
| Visa/Immigration Fees: | Provided |
| Security: | The candidate shall commence performance within thirty (30) days of the granting of the required clearance eligibility. |

This letter describes our offer of employment.  Any other discussions that you may have had with us are not part of our offer unless they are described in this letter.  If you choose to accept this offer of employment, please sign and return an original copy of this letter.  We will appreciate a response to this offer within **two (2) business days** by at which time this offer will expire.

In addition, as a condition of employment, we require all new employees to sign the enclosed Confidentiality Agreement, submit to a background check and drug screening.

EXHIBIT 1, PAGE 1

**AECOM**

Offer of Employment
Page Two

If this letter fails to correctly reflect your understanding of our conversations, please contact me. It is our pleasure to be able to extend this offer to you and we welcome you to the AECOM team.

Sincerely,


Bill Lyles
CFT, General Manager

AGREED AND ACCEPTED:


_____        _____
Signature                                                                                                  Date



_____
Printed Name


_____
Departing Airport

**AECOM**



# AECOM GOVERNMENT SERVICES
# UNACCOMPANIED EMPLOYMENT AGREEMENT
# FOR CLASSIFIED WORK

## Unaccompanied Employment Agreement

This Employment Agreement, (hereinafter referred to as "AGREEMENT") is executed and entered into by and between AGS|AECOM (hereinafter referred to as "EMPLOYER"), and the person named in Article 1, below (hereinafter referred to as "EMPLOYEE"). This Agreement sets forth the terms and conditions under which Employer agrees to employ Employee and under which Employee agrees to be employed by Employer in the specified Job Classification, at the designated location, for the stated compensation package, and for the period set forth in Article 1, below. Employer and Employee may be referred to as the "Parties" to this agreement. Employee's employment is contingent upon.  The EMPLOYEE accepts employment to perform certain classified work subject to passing medical screening and the ability of EMPLOYER to obtain the appropriate security clearance, work permit, and residence visa or other criteria for entry into and work in the designated Country /work location

Index of Articles
Article 1 – Terms of Employment and Compensation
Article 2 – Acknowledgements/ Representations
Article 3 – General Terms of Employment
Article 4 – Compensation
Article 5 – Working Hours/ Leaves
Article 6 – Travel/Relocation/Housing
Article 7 – Termination of Employment

## Article 1 - Terms of Employment and Compensation

| Name (Last, First, MI): King, Joseph M. | Passport Number: ▮▮▮▮▮▮▮▮ |
|---|---|
| Mailing Address: 5402 Sleater Kinney Road, NE, Olympia, WA 98506 | Home of Record:  SAME |

I have read the contents of this AGREEMENT and understand and accept all terms and conditions.  Further, I certify that the following terms and conditions constitute my entire AGREEMENT with the EMPLOYER, and that no representations or other commitments have been made to me other than those expressly stated in this agreement. It is specifically agreed by the Parties hereto that this AGREEMENT is not effective until it has been signed by both Parties. It may be cancelled without further obligation by either Party prior to Employee mobilization. Except as may otherwise provided in this subparagraph, this AGREEMENT may be modified only in writing, signed by both Parties. Actions and activities required by the U.S. Government to be undertaken or performed under Employer's contract with its client, such as, official orders, directives, policies, or procedures, may be added to the terms of this agreement by a written notice provided to Employee by Employer. Any and all written modifications and/or extraneous markings must be initialed by the Employer and Employee in order to constitute a valid modification to this AGREEMENT.

This AGREEMENT, consisting of nine (9) pages, is executed by the Parties named herein as of this

_____ day of_____ , _____.

**EMPLOYEE**:                                                                                   **EMPLOYER**:

_____                    _____
Employee's Signature                                                              AGS|AECOM
                                                                                                        Authorized Representative's Signature

_____                    _____
Employee's Printed Name                                                       AGS|AECOM
                                                                                                        Authorized Representative's Printed Name

Employee Initials_____                                                                                               1 of 9

10/07                                                                                                                   EXHIBIT 2, PAGE 1



| | | | |
|---|---|---|---|
| Employee Number: | Rehire (Y/N):  **N** | Date of Hire: (on or about) September 20, 2012 | Start Date for Current Period of Active Employment: September 20, 2012 |
| Job Classification: **Aircraft Mechanic II** | | | **Compensation**:<br>- Basic bi-weekly salary: $3,911.87<br>**Allowances**:<br>- Allowances are NOT calculated or paid on overtime wages earned.<br>- Subject to Government Directed Adjustments. |
| Term of Agreement (Start and Completion Date on or about):<br><br>September 20, 2012 – September 19, 2013<br><br>Note:  Term of Agreement may be altered by EMPLOYER should contract be closed or extended. | | | **Other Allowances**:<br>- Project Incentive Pay – $6,000 |
| Assigned Work Location: | | | **Alternate Work Locations**: Subject to direction from the EMPLOYER as stated in Article 3.1 of the AGREEMENT. |
| In Case of Emergency, Notify<br>Name: | | | |
| Address: | | | |
| City, State, Zip: | | | |
| Relationship: | | | Telephone: |

The EMPLOYEE shall be in Unaccompanied Status while employed under this AGREEMENT.

## Article 2 - Acknowledgements/Representations

### 2.1 Representation of Qualifications
The EMPLOYEE acknowledges that the duties and requirements of the Job Classification to which he/she will be assigned have been explained in detail by the EMPLOYER, and warrants that he/she is fully qualified and capable to perform such duties and to comply with such requirements. The EMPLOYEE acknowledges further that he/she will maintain high standards of professional skill, and will be required to perform all duties in accordance with the directions and instructions of the EMPLOYER. The EMPLOYEE acknowledges that he/she has such licenses, certificates, credentials and the like as are required or customary for performance of the job for which he/she is hired and further represents that he/she is medically fit for overseas employment.

EMPLOYEE represents to EMPLOYER that all information provided with respect to obtaining employment is true and accurate to the best of his/her knowledge.

### 2.2 Emergency Operations
The EMPLOYEE acknowledges that the requirements of the EMPLOYER's contract are essential to the mission and operational readiness of allied forces operating in Country, and that the EMPLOYEE is hired to fill a position in the critical support functions that the EMPLOYER will be required to continue to perform during war or other state of emergency.

The EMPLOYEE, if requested by the EMPLOYER, shall continue to perform services as assigned by EMPLOYER under the terms and conditions of this AGREEMENT, notwithstanding: the existence of any state of war (declared or undeclared); state of emergency declared by the United States or Host Country; commencement of hostilities; internal strife, rioting, civil disturbance; or, circumstances of any type which may endanger the welfare and security of United States Forces in Host Country. In addition, the EMPLOYEE shall participate, as directed by the EMPLOYER, in any requirement relating to the United States preparation for war or any other state of emergency as directed. The EMPLOYEE shall participate in and assist, as may be required by military authority, in any military or dependent evacuation plan. At the direction of the local U.S. Commander, the EMPLOYEE shall participate in any requirement relating to U.S. Government preparation for any of the above incidents. In the event EMPLOYEE is requested to perform services under the circumstances described above, EMPLOYEE shall receive compensation in accordance with the terms and conditions of this AGREEMENT.

The EMPLOYEE understands that EMPLOYER reserves the right to temporarily reassign the EMPLOYEE to any other Job Classification for which he/she, in the judgment of the EMPLOYER, is qualified, at the hours and on such shifts as designated by the EMPLOYER, provided that the salary or basic hourly rate of the EMPLOYEE may not be reduced. EMPLOYEE agrees to perform such work to the best of his/her ability.

EMPLOYEE acknowledges that he/she understands the danger, stress, physical hardships and field living conditions that are possible when deploying to contracts in support of military operations.

### 2.3 Physical Qualifications

It is the responsibility of the employee to ensure that he/she has no physical limitations precluding performance of the job Classification. Emphasis should be placed on diagnosing cardiovascular, pulmonary, orthopedic, neurological, endocrinological, dermatologic, psychological, visual, auditory or dental conditions limiting performance. It shall be the responsibility of the EMPLOYEE to keep current all vaccinations and inoculations required in the performance of his/her duties or for travel. Employee is responsible to have in his/her possession a current shot record with appropriate immunizations.

Employee is responsible to take two pairs of glasses and a current prescription if required, spare hearing aid batteries, sunglasses, insect repellent, sunscreen, 90-day supply of required prescriptions and other supplies related to the individual's physical requirements.

The EMPLOYEE is hereby advised that countries may require negative Hepatitis, negative Tuberculosis and negative HIV results from a Government Medical Clinic before a resident visa, work permit and civil identity card can be issued. The EMPLOYER will provide such testing after arrival in Country if required.

EMPLOYEE understands that assignment to the Middle East under this contract will require initial and recurring random drug screening, initial medical screening, examinations, immunizations and vaccinations, which may include Anthrax vaccine immunization. The Government may require medical screening at the CONUS Replacement Center (which could include DNA sampling and immunizations for Contractors deploying OCONUS).

### 2.4 Performance Appraisals

The EMPLOYEE's work performance shall be subject to Employer's and Prime Contractors Appraisals during the course of his/her employment under this AGREEMENT. The customer's evaluation reports will constitute one criterion in ascertaining EMPLOYEE satisfactory performance levels.

### 2.5 Compliance with Local Civil Laws and Regulations, U.S. Government Laws and Regulations, and Company Policies, Procedures, and Standards of Conduct

EMPLOYEE shall comply with applicable local civil laws and regulations, U.S. Government laws and regulations applicable to the contract and to contractor employees accompanying the forces or performing work on a military installation, and with the policies, procedures, and Standards of Conduct of EMPLOYER.  Due to the serious personal consequences and EMPLOYER impact of EMPLOYEE noncompliance with such requirements, EMPLOYEE conduct and compliance shall include activities in the workplace, the work commute, residence, travel and while off duty. Violations of any applicable law, regulation. policy, procedure or Standard of Conduct may be subject to disciplinary action by EMPLOYER, up to and including termination of employment.

EMPLOYEE shall familiarize him/herself with local civil law and regulations and related customs as they may regulate activities, such as, dealing with the importation of items and substances into the country; prohibited use of designated items and substances; access and use restrictions applicable to buildings, facilities, and areas; traffic regulations and customs; and relations and relationships with local nationals, co-employees and Client personnel, and third parties residing or working in the country.

EMPLOYEE shall comply with personal and industrial security regulations and directives issued by the U.S. Government. EMPLOYEE acknowledges that the EMPLOYER'S contract is with the U.S. Government or a prime contractor to the U.S. Government and that EMPLOYER and EMPLOYEE are subject to U.S. Government direction, authority, guidelines and regulations to include the Uniform Code of Military Justice (UCMJ). EMPLOYEE acknowledges and agrees that any action by EMPLOYER that is inconsistent with the terms of the AGREEMENT shall not result in EMPLOYER fault or liability if such action is undertaken with the reasonable belief that it is required to comply with the directives of the U.S. Government client or prime contractor.

## 2.6 Employer's Code of Conduct

The EMPLOYEE hereby confirms that he/she has read and understands the EMPLOYER's Code of Conduct, and undertakes to comply with the terms and conditions contained therein. The EMPLOYEE further agrees to fully comply with all policy directives of the EMPLOYER, of which the EMPLOYEE has been advised, requiring compliance with applicable laws covering the EMPLOYER's operations, including policies and laws regarding accounting documentation and illegal or otherwise improper payments.

In addition, the EMPLOYEE agrees that if, at any time, the EMPLOYEE believes that there is a substantial possibility that any EMPLOYEE of the EMPLOYER has violated the Code of Conduct or any other policies issued by the EMPLOYER, the EMPLOYEE shall so inform his/her immediate supervisor (unless EMPLOYEE has reason to believe that his/her immediate supervisor has participated in such violation) and/or to a member of the EMPLOYER's project management staff.

The EMPLOYER takes corporate responsibility seriously and wants all EMPLOYEES to prevent and address promptly issues that may arise concerning unethical or illegal behavior in the workplace. If EMPLOYEE has a concern regarding unethical activity in the workplace, it is important that EMPLOYEE speak up.

Concerns may be discussed with the EMPLOYER's appropriate management, human resources, and legal staff. If EMPLOYEE prefers to remain anonymous, EMPLOYEE can call a hotline that is operated by an independent third party called "The Network." The hotline operates 24 hours a day, 7 days a week and allows EMPLOYEE to communicate anonymously, without fear of harassment or retaliation.

EMPLOYEE may call from North America:  888-299-9602, or
EMPLOYEE may call from other locations:  +1-770-613-6332

Any non-compliance on the part of the EMPLOYEE with the EMPLOYER's Code of Conduct and any other policies, directives or applicable laws will result in appropriate disciplinary action, which may include Termination for Cause.

## 2.7 Patents, Data, and Copyrights

The EMPLOYEE understands that he/she will be employed under a U. S. Government Time & Materiel type contract. Under such a contract and the laws and regulations related thereto, all rights in technical data are owned by the Government if they originated under this contract. Thus, patents, copyrights, computer programs, or other technical data are owned by the U.S. Government if such information originated while the EMPLOYEE was employed under this Government contract. By signing this AGREEMENT, the EMPLOYEE agrees that he/she will have no rights to such patents, data or copyrights.

## 2.8 SECURITY

EMPLOYEE understands that his/her ability to obtain a Security Clearance prior to deployment and maintain that clearance is a condition of employment, and the EMPLOYEE shall commence performance within thirty (30) days of the granting of eligibility for a Security Clearance. EMPLOYEE understands that performance under this contract may require the EMPLOYEE to access data and information proprietary to a Government agency, another Government contractor, or of such nature that its dissemination or use other than as specified in this contract would be adverse to the interests of the Government or others. EMPLOYEE shall not divulge or release data or information developed or obtained under performance of the contract except to authorized Government personnel.  EMPLOYEE shall not disclose, or cause to be disseminated, any information concerning the operations of the activity that could result in, or increase the likelihood of, the possibility of a breach of the activity's security or interrupt the continuity of its operation.

EMPLOYEE understands that disclosure of U.S. Government classified information to any person not entitled to receive it, or his/her failure to safeguard such information that may come with his/her knowledge, may subject him/her to criminal liability under the Federal Espionage Act, Title 18, U.S. Code and will be grounds for termination for cause.



## Article 3 - General Terms of Employment

### 3.1 Assignment/Location
The location of the work to be performed is indicated in Article 1. The EMPLOYEE understands that EMPLOYER reserves the right to unilaterally reassign the EMPLOYEE to any alternate job location. The salary of the EMPLOYEE may not be reduced, based on the alternate location assigned.

### 3.2 Period of Agreement
The start date of employment shall be the date so indicated in Article 1. The term of EMPLOYMENT shall be for the Term of Agreement as set forth in Article 1 and subject to the termination provisions in Article 7.

### 3.3 Passport, Visa and License
EMPLOYEE is required to have a valid passport, driver's license, and EMPLOYER-provided visa at time of initial deployment. If EMPLOYEE's job classification requires driving or other specialized license(s), EMPLOYEE must possess such appropriate license(s) prior to deployment that remain valid throughout the "TERM OF AGREEMENT" (ARTICLE 1). After initial deployment, it is the responsibility of the EMPLOYEE to maintain a valid passport. EMPLOYEE will receive Visa processing once arrived. Fees associated with the initial acquisition of a passport and international driver's license for the EMPLOYEE, passport renewal(s) and extension(s) thereof, which have been paid by the EMPLOYEE during the term of this AGREEMENT, shall be reimbursed upon presentation of official receipts to the EMPLOYER.

### 3.4 Personal Property
The EMPLOYEE shall provide clothing and personal effects, including dentures and spectacles, necessary for satisfactory performance pursuant to this AGREEMENT.

### 3.5 Confidentiality of Employer Data
All material, data, reports, staffing and wage levels, operating procedures, or other operational and/or cost information furnished to the EMPLOYEE, or of which the EMPLOYEE gains knowledge through his/her employment, are proprietary data of the EMPLOYER and shall not be divulged, either during or subsequent to employment, unless authorized by the EMPLOYER. Any document containing such information in the EMPLOYEE's possession shall be returned to EMPLOYER promptly upon demand of the EMPLOYER or upon completion of employment.

### 3.6 Emergency Information
In the event of an emergency, accident, or death of the EMPLOYEE, the EMPLOYER will direct any notices or other communications to the person identified in ARTICLE 1, entitled "In Case of Emergency, Notify."

If, at any time, the EMPLOYER is unable to communicate directly with the EMPLOYEE regarding notices or other communications concerning this AGREEMENT or any other matter, the EMPLOYER may direct such communications to the person identified in ARTICLE 1, entitled "In Case of Emergency, Notify."

If the EMPLOYEE dies during his/her tenure with the EMPLOYER, while at the place of employment or while en route between the place of employment and any location where he/she has been assigned in accordance with this AGREEMENT, the EMPLOYER is authorized to make such arrangements as, in its judgment, are most appropriate for the disposition of the remains of the EMPLOYEE and his/her personal property. Whenever possible, the EMPLOYER will, at its expense, transport the remains of the EMPLOYEE and personal property to the Home of Record or, if so directed by the emergency contact named in ARTICLE 1, to any equivalent location.

If the EMPLOYEE becomes physically or mentally disabled as determined by a competent medical authority and is incapable of handling his/her personal affairs, the EMPLOYEE hereby authorizes the EMPLOYER to settle such affairs and to dispose of his/her personal effects as may be deemed appropriate by the EMPLOYER after consultation with the Emergency Contact named in Article 1 and to deduct from any funds due the EMPLOYEE, any cost reasonably incurred by the EMPLOYER in settling such affairs.

### 3.7 Release of Liability
The EMPLOYEE understands and accepts that he or she may be exposed to dangers due to the nature of the mission and expressly assumes that risk. The EMPLOYEE agrees that neither EMPLOYER nor any parent, subsidiary, or affiliated companies or any of their employees or agents will be liable to EMPLOYEE or anyone acting on EMPLOYEE'S behalf in the event of death, injury, or disability to EMPLOYEE, and EMPLOYEE releases EMPLOYER from all liability, including that caused by the negligence or any other actionable conduct of the EMPLOYER, its parents, subsidiaries, or affiliated companies, or any of their employees or agents. The EMPLOYEE

shall be covered by, and shall be entitled to receive Workers' Compensation benefits, as required by the Defense Base Act (as amended 42 USC 1651 et seq.), which will be the EMPLOYEE's sole remedy against the EMPLOYER or any parent, subsidiary, or affiliated company or any of their employees or agents for any job-related injury, illness, or death arising out of, and in the course of employment under this AGREEMENT.

### 3.8 Capture and Detention

In the event that the prime contractor incorporates the DFAR clause at 252.228-7003 entitled "Capture and Detention", the Employee shall be entitled to the lesser of the wage or salary amount paid at the time of capture or the amount which would have been paid under the "War Hazards Compensation Act" if the detention had occurred under that act.

### 3.9 Home of Record

The Home of Record for purposes of this AGREEMENT shall be that location from which the EMPLOYEE is transported at the EMPLOYER's expense and to where the EMPLOYEE shall be transported at the EMPLOYER's expense upon successful completion of the terms and conditions of employment as stated herein. If the EMPLOYEE is mobilized from other than the United States, his/her Home of Record shall be established by proof of residency. The EMPLOYEE's Home of Record is shown in Article 1 and shall not be amended.

## Article 4 - Compensation

### 4.1 Compensation and Payment

The EMPLOYEE's time compensation shall be paid at the basic bi-weekly salary specified in Article 1 during the term of this AGREEMENT.

Payment distribution will be as follows:
Paid in US Dollars via direct-deposit to no more than two banking institutions.

Such payments will be subject to all deductions expressly provided for herein, and all deductions authorized by the EMPLOYEE and approved by the EMPLOYER.

Direct deposits will be made bi-weekly and shall continue in effect during the EMPLOYEE's period of employment as stipulated under this AGREEMENT. Frequency of payment may be unilaterally changed by the company with 30 days advance notice.

### 4.2 Project Incentive Pay

EMPLOYEES who complete their contractual period will be rewarded with a pay incentive specified in ARTICLE 1, entitled "Project Incentive Pay." This reward shall be earned upon the completion of the "Terms of Agreement" in its entirety outlined stated in "ARTICLE 1"

### 4.3 Taxes

Payment of wages earned by the EMPLOYEE shall be subject to applicable U.S. Federal and State income tax withholding. EMPLOYER will make payroll tax deductions such as Social Security, State and Federal Unemployment and State Disability Insurance.

The Employee assumes the responsibility for filing his/her personal income tax returns.

## Article 5 - Work Hours and Leaves

### 5.1 Working Hours

Working hours will correspond to the hours of the U.S. Government organizational element supported, adjusted for seasonal-cyclical work and emergency requirements.  The EMPLOYEE's normal workweek, unless amended for operational requirements, shall consist of seven (7) days, thirteen (13) hours per day, to include a one (1) hour of unpaid lunch.  The EMPLOYER may require the EMPLOYEE to work in excess of twelve (12) hours per day and in excess of eighty-four (84) hours per week subject to Government approval. All hours worked in excess will be paid as regular straight time in accordance with ARTICLE 1, no hours worked will be recorded as overtime. The EMPLOYEE may be required to perform shift work as required by the EMPLOYER.



### 5.2 Military Reserve Duty
The EMPLOYER will not provide the EMPLOYEE with administrative time-off or allowances with respect to Reserve Duty.

### 5.3 Leave Without Pay
Periods of leave without pay must have prior approval by the EMPLOYER. While on LWOP status, an EMPLOYEE is not entitled to any pay, or allowances.

## Article 6 - Travel/Housing/Mobilization/Demobilization
The Employee is subject to the customs processing procedures, laws, agreements and duties of the country in which they are deploying to and the procedures, laws, and duties of the United States upon re-entry.

### 6.1 Transportation
While in-country, and residing in contract-provided housing, the EMPLOYEE will be provided transportation to and from the work area.

### 6.2 Furniture and Fixtures
The EMPLOYEE will be assigned to contract-provided housing based upon his/her position. Upon moving into this housing, the EMPLOYEE will be required to accept responsibility for the furniture, fixtures, and appliances provided. Upon completion of employment or upon EMPLOYEE departure for other reasons, a joint turnover inventory will be conducted and the Prime Contractor will determine if any damage discovered has resulted from other than normal wear and tear. In cases of damage in excess of normal wear and tear, the EMPLOYEE may be assessed the cost of repair or replacement. The Government reserves the right to provide housing and transportation at any time.

### 6.3 Temporary Accommodations
The Prime Contractor will make every effort to have the EMPLOYEE's intended living accommodations fully prepared upon the EMPLOYEE's arrival. Where this is not possible, the EMPLOYEE will be placed in a hotel selected by and paid for by the EMPLOYER. It is understood and agreed that payment to the EMPLOYEE by the EMPLOYER will be full settlement of any or all obligations of the EMPLOYER with respect to all temporary living expenses of the EMPLOYEE during such period. In cases where there are no hotel accommodations, the employee will be placed in accommodations that are approved by the Customer. In these cases the Employer can only ensure that the living conditions meet the contract locations standards.

### 6.4 Per Diem Reimbursement
The EMPLOYEE shall receive reimbursement for per diem in amounts and upon the terms specified by the EMPLOYER, based upon work location and time spent in travel on approved EMPLOYER business.

### 6.5 Mobilization Transportation
The EMPLOYER will provide or reimburse the EMPLOYEE at the EMPLOYER-approved rates for the cost of transportation of the EMPLOYEE from the EMPLOYEE's Home of Record to place of employment in country. Transportation shall be by the means; schedules and routes approved by the EMPLOYER and may include Government provided transportation.

### 6.6 Repatriation/Demobilization Expenses
At the successful completion of this AGREEMENT, the EMPLOYER will pay, as stated herein, the repatriation for the EMPLOYEE to his/her Home of Record. Employees terminated without cause by the EMPLOYER will pay, as stated herein, the repatriation for the EMPLOYEE to his/her Home of Record.

### 6.7 Relocation Forfeiture
In the event that the EMPLOYEE voluntarily terminates his/her employment or is Terminated for Cause prior to completion of this AGREEMENT, he/she may be obligated to reimburse the EMPLOYER for all EMPLOYEE mobilization/demobilization expenses. EMPLOYEES in their second or subsequent periods of employment are not obligated to reimburse the EMPLOYER for mobilization costs.

By executing this AGREEMENT, the EMPLOYEE authorizes the EMPLOYER to use monies that it may owe the EMPLOYEE to defray all such costs paid by EMPLOYER. If the sum of monies due the EMPLOYEE is not sufficient to reimburse the EMPLOYER for the expenses incurred, the EMPLOYEE agrees to promptly pay the balance to the EMPLOYER upon demand.

Case 3:15-cv-05108-BJR   Document 5   Filed 02/20/15   Page 19 of 20



## Article 7 - Termination of Employment

### 7.1 Voluntary Termination by Employee
The EMPLOYEE may voluntarily terminate this AGREEMENT by providing a thirty (30)-day written notification. By doing so, the EMPLOYEE shall forfeit all EMPLOYER-provided benefits; Completion Bonus accrued (if applicable) and will be required to pay expenses in accordance with Article 6.7 of the agreement. In the event the EMPLOYEE's voluntary termination involves the EMPLOYEE accepting employment elsewhere in Country, EMPLOYEE agrees to reimburse EMPLOYER for all costs associated with transferring EMPLOYEE's sponsorship.

### 7.2 Termination Without Cause
Employer can, at its sole discretion, terminate this Contract at any time. In the event of such termination, the undersigned shall be entitled to pro-rated end of contract bonus (if applicable) and return transportation. Employer shall be responsible for return transportation costs.

### 7.3 Termination With Cause
The EMPLOYER shall have the right to terminate an EMPLOYEE for Cause if directed by the PRIME CONTRACTOR or the U.S. Government that continued employment would be prejudicial to the interest of the United States Army or the local governments. Further, if violation of or deviation from the established security procedures by EMPLOYEE results in the confiscation of identification media and denial of future entry to the installation or the Government terminates the entry of any EMPLOYEE upon disclosure of information which indicates the individual's continued entry to the installation is not in the best interests of national security, such directed Termination for Cause shall be deemed as Security and Safety violations.

The prohibited actions listed below are imposed by this AGREEMENT. The EMPLOYEE is obligated not to commit any prohibited action. Any breach of this obligation may result in the EMPLOYEE being immediately terminated for Cause by the EMPLOYER.

a. The use or possession of illegal narcotics or other illegal controlled chemical or organic substances.
b. Carelessness or gross negligence of any kind with regard to property (either Government or EMPLOYER-owned) or professional/trade practice.
c. Professional incompetence.
d. Insubordination or failure to carry out the instructions of an EMPLOYER's representative or an authorized representative of the military or U.S. Government or local governments.
e. Failure to comply with U.S. and/or a local Government and/or EMPLOYER's orders, regulations, directives, policies or procedures.
f. Illegal trading in currency or property, to include misuse of logistical support or duty-free privileges afforded the EMPLOYER or U.S. Government.
g. Non-disclosure, misrepresentation or falsification of any material fact for the purpose of, or in connection with, securing employment with the EMPLOYER.
h. Violation of safety or security directives and/or responsibilities.
i. Any possession or use of alcoholic beverages if precluded by military directives or local laws.
j. Inappropriate personal conduct at any time that reflects unfavorably upon the U. S. Government, the Prime contractor or the EMPLOYER.
k. The inability to work due to sickness or ill health resulting from the EMPLOYEE's own fault or willful misconduct.
l. The taking of unauthorized leave or failure to return from scheduled leave within the limits established by applicable Labor Law without a reasonable excuse and/or the permission of the EMPLOYER.
m. Failure to obtain a driver's license if required by EMPLOYER to do so.
n. Participation in local or regional politics.
o. The personal use of U.S. Government, Prime contractor or EMPLOYER-owned equipment, which includes (but is not limited to) telephones, fax machines, computer equipment, photocopiers for personal reasons without either the express permission of the EMPLOYER or his designated representative and/or without paying any charges incurred thereby
p. Subversive activity, organizing activity, petition activity or other activities that may lessen the performance and productivity of other employees or subcontractor personnel.
q. The possession or transportation of pornographic material defined as any medium, which displays human genitalia, uncovered woman's breast, or any human sexual act.

Termination for Cause will result in forfeiture of all local Labor Law and/or EMPLOYER-provided benefits. The EMPLOYEE may be obligated to reimburse the EMPLOYER for all reasonable costs incurred. The EMPLOYER may also withhold funds from final payment in order to cover any costs incurred by the EMPLOYEE.

Employee Initials_____                                                                                                       8 of 9

10/07                                                                                                          EXHIBIT 2, PAGE 8



### 7.4 Final Settlement

Upon conclusion of employment, and concurrent with payment to the EMPLOYEE of all amounts due him/her hereunder, the EMPLOYEE shall execute and deliver to the EMPLOYER a receipt for said payment to include a release of all claims except such related claims as may have been submitted, but which may remain unsettled. The EMPLOYEE shall also surrender all Government and EMPLOYER issued identification and privilege cards.